## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JOSE REBOUCAS, ON HIS OWN
BEHALF AND ON BEHALF OF THOSE
SIMILARLY SITUATED,

                            **Plaintiffs,**

-vs-                                                  **Case No.  6:08-cv-280-Orl-28KRS**

LCM INVESTMENT GROUP, INC.,  LUIS
CARMANO,

                            **Defendants.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT (Doc. No. 11)** |
| **FILED:** | **June 11, 2008** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

## I.    PROCEDURAL HISTORY.

On February 25, 2008, Jose Reboucas, on his own behalf and on behalf of those similarly

situated,[1] filed a complaint against Defendants LCM Investment Group, Inc. and Luis Carmano

_____

[1] No other persons elected to join in this case as putative plaintiffs.  I recommend the
Court dismiss the collective action allegations.

("Defendants"). He alleged that Defendants failed to pay him overtime compensation due under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. Doc. No. 1. He also seeks liquidated damages, attorney's fees, and costs. *Id.*

The complaint was served on Defendant Carmano individually and in his capacity as registered agent for LCM Investment Group, Inc. on March 6, 2008. Doc. Nos. 6-7. Defendants did not timely respond to the complaint. Thereafter, at Reboucas' request, the Clerk of Court entered a default against Defendants. Doc. Nos. 9-10.

After entry of default, Reboucas filed the instant Motion for Default Judgment. Doc. No. 11. In support of the motion, Reboucas filed the Affidavit of Jose Reboucas (Reboucas Aff.) with an exhibit, Doc. No. 11, Ex. A, A-2, and an Affidavit for Reasonable Attorneys' Fees signed by Carlos V. Leach (Leach Aff.) with an exhibit, *Id.* Ex. B, B-1. Defendants have not responded to the motion as of the time of writing this recommendation, and the time for doing so has passed.

## II.    APPLICABLE LAW.

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Therefore, in considering a motion for default judgment, a court must examine the sufficiency of the allegations in the complaint to determine whether the plaintiff is entitled to a default judgment. *Fid. & Deposit Co. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines

the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). If a default judgment is warranted, the Court may hold a hearing for purposes of assessing damages. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)(citing Federal Rule of Civil Procedure 55(b)(2)). However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages. *Id.*

## III.   ANALYSIS.

A.     *Allegations of the Complaint*.

Reboucas was employed by Defendants as a driver and performed other related activities. Doc. No. 1 ¶ 1. Defendant LCM Investment Group was an enterprise covered by the FLSA. *Id.* ¶ 2. Defendant Luis Carmano was a manager who acted with direct control over the work, pay, and job duties of Reboucas. *Id.* ¶ 3. Defendants did not pay Reboucas one and one-half times his regular rate of pay for all hours he worked in excess of forty hours per week during one or more work weeks. *Id.* ¶ 8. The failure to pay overtime compensation was willful. *Id.* ¶ 12.

B.     *Liability*.

To prevail on a claim for payment of overtime under the FLSA, Reboucas must establish the following:

First, that he was employed by Defendant during the time period involved;

Second, that he was engaged in commerce or production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce;

Third, that Defendant failed to pay the overtime pay required by law.

*See* Eleventh Circuit Pattern Jury Instructions–Civil 1.7.1 (2005).

By defaulting, LCM Investments Group admits that it employed Reboucas during the relevant time period.  LCM Investment Group further admits that it was an enterprise within the definition of the FLSA.   It admits that it failed to pay overtime compensation as required by the FLSA.  This is sufficient to establish that LCM Investments Group is liable to pay Reboucas overtime wages he is owed for his work.

Under the FLSA, an employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). "'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid [overtime] wages.'" *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Id.* at 638.

By failing to answer the complaint, Carmano admits that he was substantially in control of the terms and conditions of Reboucas' work.  Accordingly, Carmano is jointly and severally liable with LCM Investment Group for overtime compensation due under the FLSA but unpaid.

-4-

C.    *Damages*.

1.    <u>Overtime Compensation</u>.

Under the FLSA, Reboucas is entitled to be paid one and one-half times his regular rate of pay for all hours in excess of forty worked in a work week.  *See* 29 U.S.C. § 207(a)(1).  Reboucas has the burden of proving the amount of damages to be awarded.

When the employer has violated his duty to keep adequate records, the employee satisfies this burden by producing "sufficient evidence to prove that he 'performed work for which he was improperly compensated' and 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"  *McLaughlin v. Stineco, Inc.*, 697 F. Supp. 436, 450 (M.D. Fla. 1988)(quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).  If the employer does not come forward with evidence of the precise amount of work performed or other evidence to negate the plaintiff's *prima facie* case, the "court may award approximate damages based on the employee's evidence."  *Id.*; *see also Etienne v. Inter-County Sec. Corp.*, 173 F.3d 1372, 1375 (11th Cir. 1999)("[W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.").

Reboucas avers that he was paid on an hourly basis at the rate of $6.75 per hour while employed by Defendants.  Reboucas Aff. ¶ 5.  His invoice, which he refers to as a "check stub," for the pay period February 17, 2007 to March 2, 2007, reflects that he worked an average of 86.06 hours per week during that period.  Reboucas Aff. ¶ 7; Doc. No. 11, Ex. A-2.  His invoice for the pay period

March 3, 2007 to March 16, 2007 reflects that he worked an average of 88.96 hours per week during that period.  Reboucas Aff. ¶ 8; Doc. No. 11, Ex. A-2.  Reboucas does not have invoices for all of the weeks he worked for Defendants.  Reboucas Aff. ¶ 9. He attests that he worked an average of 80 hours per week for the entire period of his employment.  Reboucas Aff. ¶ 5.   He was paid straight time for all hours worked.  Accordingly, he seeks only the overtime premium of one-half his regular hourly rate, which is $3.38 ($6.75/2).

Reboucas avers that he worked from approximately August 25, 2004 through April 9, 2007. *Id*. ¶ 4, 10.  Because Defendants' violation of the FLSA was willful, the statute of limitations for Reboucas' claim is three years from the date the complaint was filed. *See* 29 U.S.C. § 255.  Therefore, Defendants must pay Reboucas unpaid overtime compensation from February 25, 2005, three years before the complaint in this case was filed, through April 9, 2007, a period of 110 full work weeks.[2] However, Reboucas avers that he worked only 104 weeks of overtime.  Reboucas Aff. ¶ 10. Because Defendants did not come forward with evidence of the precise amount of work performed by Reboucas, Reboucas's affidavit is sufficient to carry his burden of proof regarding the hours worked and his pay.

To determine the amount of overtime due to an hourly employee, the Court calculates "a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week." 29 C.F.R. § 778.110(a). Reboucas avers he worked 80 hours per week. Accordingly, he is entitled to an overtime premium of one-half his hourly rate for the 40 hours of overtime worked

---

[2]      There were 773 days between February 25, 2005 and April 9, 2007.  *See* CalendarHome.com, available at http://www.calendarhome.com/date.shtml (last visited Aug. 27, 2008).  This equates to 110 full work weeks (773/7 days per week).

per week. Based on 104 work weeks within the statute of limitations period, multiplied by 40 hours of overtime a week, Reboucas was not compensated for 4160 hours of overtime work. Based on the overtime premium rate of $3.38 per hour, Defendants are liable to pay Reboucas $14,060.80 for overtime compensation.

2.      Liquidated Damages.

By defaulting, Defendants admit that they acted willfully in failing to pay Reboucas the required overtime compensation. When, as here, the defendant has not presented a defense that the failure to pay overtime compensation was in good faith, the Court must also require the employer to pay liquidated damages in an additional amount equal to "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be[.]" 29 U.S.C. § 216(b); *see also* 29 U.S.C. § 260; *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1191 n.18 (5th Cir. 1979). Accordingly, Defendants are liable to pay Reboucas $14,060.80, the amount of unpaid overtime compensation owed to him, as liquidated damages.

D.      *Attorney's Fees and Costs*.

The FLSA mandates that in any action brought by an employee to enforce § 206 or § 207 of the Act, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Supreme Court stated that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." This amount, which is commonly referred to as the lodestar, is then adjusted to reflect the "results obtained." *Id*. at 434; *accord Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).

Reboucas seeks an award of $2,550.00 for the services provided by his attorney, Carlos V. Leach, and $410.00 in costs in connection with this case. Leach Aff. ¶ 6. The "'fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'" *Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999)(quoting *Norman*, 836 F.2d at 1303). Thus, the applicant must produce satisfactory evidence that the requested rate is within the prevailing market rates and supports the number of hours worked and the rate sought. *Hensley*, 461 U.S. at 433. "[F]ee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Moreover, fee applicants must provide "fairly definite information" concerning activities performed by each attorney. *See Mallory v. Harkness*, 923 F. Supp. 1546, 1556 (S.D. Fla. 1996).

It is well established that the Court may use its discretion and expertise to determine the appropriate hourly rate to be applied to an award of attorney's fees. *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002).

      1.    <u>Hourly Rate</u>.

Leach has been licensed in Florida since 2002. He attests that a reasonable rate for an attorney with his experience is $250.00 per hour, Leach Aff. ¶ 4,[3] but he offers no independent evidence of the type required by *Norman* to support the reasonableness of this hourly rate. This Court has previously determined that a reasonable rate for Leach is $160.00 per hour. *See Dial v. Little Wagon Errand Servs., Inc.*, Case No. 6:07-cv-1072-Orl-28KRS, 2008 WL 227967, at * 1, 5 (M.D. Fla, Jan 25, 2008); *King v. FSA Network, Inc.*, Case No. 6:07-cv-78-Orl-22JGG, 2007 WL 3072262, at *1 (M.D. Fla. Oct. 19, 2007). Absent evidence to support a higher hourly rate, I conclude that $160.00 is a reasonable hourly rate for Leach's work in this case.

      2.    <u>Reasonable Number of Hours</u>.

Reboucas submitted a detailed Time Sheet indicating the work performed by Leach in this case reflecting the Leach worked 9 hours on this case.  Doc. No. 11-5.  According to the Time Sheet submitted with the Leach Affidavit, Leach Aff. Ex. 1, some of the work was clerical in nature. *See id.*, 2/13/2008, .30 "Preparation of Civil Cover Sheet;" 2/13/2008, 0.30 "Preparation of Summons";

---

[3]    Confusingly, Plaintiff's motion seeks attorney's fees in the amount of $2,550.00, or 8.5 hours at $300.00 per hour. However, the Leach Affidavit attached to the motion claims 9 hours at $250.00 per hour, or a total of $2,250.00. The Leach Affidavit miscalculates this total as $2,550.00.

2/21/2008, 0.30 "Preparation of Notice of Consent to Join";[4] 3/19/2008, 0.30 "Review of returned letter 3/14/08."   Work that is purely clerical in nature is not compensable. *See, e.g., Scelta v. Delicatessen Support Servs. Inc.*, 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002)("[P]aralegal work is viewed as falling within the category of unrecoverable overhead expenses.")(internal quotations omitted)*; Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000); *see also Missouri v. Jenkins*, 491 U.S. at 288 n.10 ("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.").   Therefore, I recommend that the Court reduce Leach's time by 1.2 hours.

In addition, the Time Sheet reflects review of several documents long after the documents were filed with the Court.  *See* Doc. No. 11-5, 3/4/2008, 0.10 "Review of complaint against defendant"; 3/21/2008, 0.10 "Review of plaintiffs certificate of interested persons and corporate disclosure statement." Because no information is provided detailing the necessity for this belated review of the documents previously filed, I find that this time, totaling 0.2 hours, was not reasonable.

Finally, the Time Sheet reveals that counsel spent an excessive amount of time reviewing and preparing responses to the notice of pendency of other actions and order to file a certificate of interested persons.  *See id.* 3/5/2008, 0.20 "Review of Interested Persons & Related Case Order"; 3/10/2008, 0.30 "Preparation of Certificate of Interested Persons"; 03/10/2008, 0.40 "Prepare of Notice [*sic.*] of Pendency of Other Actions pursuant to Court's Order." Review of the file reflects that the Notice of Pendency of Other Actions is merely a form supplied by the Court on which Leach

---

[4] Because Reboucas was the named plaintiff, a notice of consent to join the case was unnecessary.

checked that there were no related cases, dated and electronically signed it. Doc. No. 4. Similarly, the Certificate of Interested Persons is a form supplied by the Court in which Leach inserted the names of the parties and lawyers representing the parties. Doc. No. 5. These forms are standard in all litigation in this Court, and Leach is familiar with them. A reasonable time to review and complete each form is 0.1 hours.  Accordingly, I recommend that the Court deduct these 0.7 hours worked by Leach.

The lodestar attorney's fee in this case are as follows:

| Attorney | Hourly Rate | Hours | Total |
|---|---|---|---|
| Carlos V. Leach | $160.00 | 6.9 | $1,104.00 |

3.    <u>Costs</u>.

Federal Rule of Civil Procedure 54(d)(1) provides that "costs–other than attorneys' fees–should be allowed to the prevailing party." A court cannot award costs other than those specifically authorized in 28 U.S.C. § 1920, unless authorized by another applicable statute. *See United States EEOC v. W&O, Inc.,* 213 F.3d 600, 620 (11th Cir. 2000).

Reboucas seeks an award of costs in the amount of $350.00 for reimbursement for the filing fee and $60.00 for the costs of serving process in this case. Leach Aff., Ex. 2. "Costs for service of process and the filing fee are . . . properly awarded under 28 U.S.C. § 1920 . . . ." *Perrin v. John B. Webb & Assocs.*, No. 604CV399ORLKRS, 2005 WL 2465022, at *5 (M.D. Fla. Oct. 6, 2005).

Plaintiff claims $3.75 for unspecified photocopy costs. Section 1920(4) authorizes the taxation of costs for "copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Costs for

the convenience of counsel, however, are not allowed. *Helms v. Wal-Mart Stores, Inc.*, 808 F. Supp. 1568, 1570 (N.D. Ga. 1992). *See also Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996)(general copying costs are not recoverable). The party seeking recovery of photocopying costs "must come forward with evidence showing the nature of the documents copied, including how they were used or intended to be used in the case . . . . A prevailing party may not simply make unsubstantiated claims that such documents were necessary, since the prevailing party alone knows for what purpose the copies were made." *Helms*, 808 F. Supp. at 1570 (internal citations omitted). *See also Desisto College, Inc. v. Town of Howey-in-the-Hills*, 718 F. Supp. 906, 914 (M.D. Fla. 1989)(declining to award photocopy costs where party did not itemize the photocopies that are the subject of the motion). As Plaintiff makes no showing that the photocopy charges were necessary for the case, the costs are denied.

Plaintiff's claim for postal charges are similarly improper. *Duckworth*, 97 F.3d at 1399; *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp.2d 1328, 1329 (M.D. Fla. 2002).

Accordingly, Reboucas is entitled to an award of $410.00 in costs from Defendants.

**IV.    RECOMMENDATION.**

Based on the foregoing, I respectfully recommend that the Court **GRANT** in part and **DENY** in part the Motion for Entry of Default Final Judgment, Doc. No. 11. Specifically, I further recommend that the Court order the LCM Investment Group, Inc. and Luis Carmano, jointly and severally, to pay Reboucas damages in the amount of $28,121.60, attorney's fees in the amount of $1,104.00, and costs in the amount of $410.00. I further recommend that the Court **DISMISS** the collective action allegations. Finally, I recommend that the Court direct the Clerk of Court to issue a

judgment consistent with its ruling on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 28, 2008.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE